**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**THE HUNTINGTON NATIONAL BANK**                         **PLAINTIFF**

**And**

**ROBERT S. STUMP**                         **NECESSARY PARTY-PLAINTIFF**

**VERSUS**                         **CIVIL ACTION NO. 2:05cv11KS-MTP**

**ENTECAP CORPORATION**                         **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Motion for Summary Judgment **[#18]** filed on

behalf of The Huntington National Bank and on Motion to Dismiss filed on behalf of

Robert S. Stump **[#21]**.  The court, having reviewed the motions, the responses, the

briefs of counsel, the pleadings and exhibits on file and being fully advised in the

premises finds that both motions are well taken and should be granted.  The court

specifically finds as follows:

**FACTUAL BACKGROUND**

On or about March 26, 2004, the Circuit Court of the Common Pleas of Lucas

County, Ohio, in case number CI0200402406, entered a Partial Final Judgment in favor

of Huntington National Bank ("Huntington Bank"), an Ohio corporation with its principal

place of business in Columbus, Ohio, and against Weldon F. Stump & Co., Inc. and

Robert S. Stump ("Stump") the defendants to that action.  Stump is an individual Ohio resident and a stockholder in Entecap Corporation ("Entecap"), a Mississippi corporation with its principal place of business in Hattiesburg, Mississippi.

Since obtaining the Judgment, Huntington Bank has affirmatively attempted to locate assets of Stump upon which it could execute in order to reduce or satisfy the Judgment.  Stump's assets include shares of stock in Entecap.  Accordingly, Huntington Bank enrolled its Judgment against Stump in Forrest County, Mississippi.

However, Stump gave sworn testimony during a deposition taken in connection with the Ohio Action that he does not know the location of his Entecap share certificate.  Huntington Bank, therefore, caused five Writs of Execution to be issued by the Circuit Clerk of Forrest County instructing the Sheriff of Forrest County to execute upon Stump's shares and interests in Entecap in satisfaction or partial satisfaction of the Judgment in favor of Huntington Bank.

In accordance with Miss. Code Ann. § 13-3-129, the Sheriff levied upon those shares and interests pursuant to the five Writs of Execution on the following dates, respectively: January 20, 2005; February 24, 2005; May 24, 2005; August 1, 2005; August 17, 2005; and October 3, 2005.  Entecap served Statement of Interest Forms in response to the various Writs of Execution indicating that Stump owns 33% of the shares of stock in Entecap, or 1000 shares.

Huntington Bank has also caused eight Writs of Garishment to be issued by the Circuit Clerk of Forrest County on the following dates: January 20, 2005; February 24, 2005; April 18, 2005; May 6, 2 005; May 31, 2005; June 29, 2005; August 15, 2005; and September 16, 2005.  The Writs of Garnishment summoned Entecap to answer

2

under oath, *inter alia*, whether it was in any manner indebted to Stump and whether it had in its possession or under its control any of Stump's effects, including original or reissued stock certificates.   Entecap served sworn answers to the eight Writs of Garnishment on or about the following dates: February 16, 2005, as amended March 3, 2005; March 14, 2005; April 29, 2005; May 19, 2005; June 13, 2005; June 17, 2005; July 28, 2005; August 26, 2005; and October 17, 2005.  Entecap's sworn answers state that while Stump is an Entecap shareholder, Entecap does not have possession of nor knowledge of the whereabouts of Stump's share certificates.

Huntington Bank commenced this action on January 6, 2005 by filing, solely against Entecap, its Complaint and Motion for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against Entecap.  Huntington Bank has asserted that the Complaint was filed because it had discovered that Entecap was winding down its affairs and was about to sell its only known material asset, a building located in Harrison County, Mississippi, for $920,000.00.  The sale proceeds were to be distributed to Entecap's shareholders.  Huntington Bank feared that, should the sale and distribution occur, Stump's Entecap shares would be rendered essentially worthless and he would possibly conceal the proceeds he received from the sale.  Accordingly, Huntington Bank sought certain declaratory relief as well as injunctive relief to protect against the alleged irreparable harm it could suffer should Entecap distribute any such proceeds to Stump.

Shortly after the Complaint was fied, on January 7, 2005, an Agreed Order was entered by this court providing that Entecap shall not distribute any funds, payments, income, dividends, or proceeds to any entity other than the Clerk of this Court that

3

would be or are due to be paid to the holder of Stump's interest in Entecap, or to Stump, until after this court has held a hearing on Huntington Bank's request for temporary injunctive relief and an Order has been entered regarding same.

On December 8, 2005, Chief Magistrate Judge Roper held a telephonic status conference with counsel for both Entecap and Huntington Bank.  During that conference, Judge Roper observed that Stump was not a party to the instant action and stated that he wanted Stump to have the opportunity to protect his interests herein.  As such, Judge Roper entered a Text Order that same day ordering Huntington Bank to file a motion to join Stump as a "Necessary Party" to this action.  Accordingly, Huntington Bank filed its Motion to Join Robert S. Stump as a Necessary Party-Plaintiff  pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, on December 22, 2005.

Judge Roper entered a Text Order granting the Motion to Join on January 24, 2006.  Thereafter, and pursuant to Fed. R. Civ. Pro. 4( e) and Miss. R. Civ. Pro. 4(c)(5), Huntington Bank served Stump with a Summons, along with a copy of the Complaint, the December 8 Text Order, the Motion to Join, and the January 24 Text Order, at his Ohio address via certified mail, return receipt requested.  Further, the return of service was filed with this court on March 20, 2006.

On April 12, 2006, and after receiving leave from this court, Huntington Bank filed its' Amended Complaint and Motion for Temporary Injunction and Permanent Injunction in order to clarify the declaratory relief sought herein.  No relief was sought against Stump in the Amended Complaint.

On September 29, 2006, Huntington Bank filed its Motion for Summary Judgment on the Amended Complaint, along with a supporting brief, seeking the following relief: (i)

4

a determination of which of two statutes should be followed in order for Huntington Bank

to properly execute on Stump's Entecap stock in satisfaction or partial satisfaction of its

Judgment; (ii) if it be the one requiring seizure of the physical stock certificate, an Order

directing Entecap to reissue Stump's certificate for delivery to the Forrest County Sheriff;

(iii) a declaration that Huntington Bank may credit bid all or part of the amount of its

Judgment at the execution sale of Stump's stock; and (iv) an Order instructing the

Sheriff to execute upon and sell Stump's shares in Entecap with the credit bid of

Huntington Bank or the cash proceeds from another higher bidder to be applied toward

satisfaction of Huntington Bank's Judgment against Stump.

In response to Huntington Bank's motion, Entecap has filed a document styled

"Objection to Motion for Summary Judgment," wherein it is asserted that

> The Respondent would show that there is continued litigation in the Chancery Court of Harrison County in Cause Number 05-0067(3) in the case styled *Robert S. Stump vs. ENTECAP, a Mississippi Corporation, Mary F. Turner, Executor of the Estate of James E. Turner, Jr.; Debra Epstein; Mark H. Epstein; Jill Epstein White; Isabelle Epstein Blumberg; Amy Epstein Gadsden; Brian Epstein; and Lynn Turner Shaver*; that all issues in that case have not been resolved and there are still claims that Entecap has pending in that cause against Robert S. Stump.
>
> That Entecap would show that it has a cross claim against Robert S. Stump for damages and would object to this Court making any determination or entering any Order that would stay, delay or interfere with the litigation in the Chancery Court of Harrison County.
>
> Entecap would further show that this Court entering an Order as to Robert S. Stump's stock in Entecap at this time could adversely affect Entecap's legal position, claim and ongoing litigation in the Chancery Court of Harrison County.

Stump has not filed a response to Huntington Bank's Motion for Summary

Judgment.  Stump has, however, filed his Motion to Dimiss and supporting brief, twelve

days after the dispositive motion deadline set by this court in the Case Management

Order.  In the Motion to Dismiss and brief, Stump raises the defenses contained in Fed. R. Civ. Pro. 12(b)(1) (lack of subject matter jurisdiction), 12(b )(2) (lack of personal jurisdiction over Stump), 12(b)( 4) (insufficiency of process with respect to Stump), and 12(b)( 5) (insufficiency of service of process with respect to Stump), and requests this court to: (i) dismiss all claims against him, (ii) "dismiss" Huntington Bank's Motion to Summary Judgment, and (iii) dismiss him as a party to these proceedings.


## STANDARD OF REVIEW

### Summary Judgment

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.

6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  Id.  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to

respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

**Joinder under Rule 19, Federal Rules of Civil Procedure**

Rule 19 of the Federal Rules of Civil Procedure governs joinder of persons needed for just adjudication and provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." FED. R. CIV. P. 19(a).  The Rule entails a twofold inquiry: (1) whether the party should be joined if feasible; and (2) whether, if joinder is not possible, the action should be dismissed.  *A.J. Kellos Constr. Co., Inc. v. Balboa Ins. Co.*, 495 F. Supp. 408, 413 (S.D. Ga. 1980).

"Compulsory joinder is an exception to the general practice of giving plaintiff the right to decide who shall be the parties to a lawsuit.  Although a court must take cognizance of this traditional prerogative in exercising its discretion under Rule 19, plaintiff's choice will have to be compromised when significant countervailing considerations make the joinder of  particular absentees desirable."  7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §1602 (3rd ed. 2001).

Moreover, "[t]he federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and

9

completely disposed of." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986) (citing the advisory committee note).  In accord, "Rule 19 seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder." *Id.*  However, Rule 19 does not set forth a rigid or mechanical formula for decision. *JTG of Nashville, Inc. v. Rhythm Band, Inc.*, 693 F. Supp.  623, 625 (M.D. Tenn. 1988) (citations omitted).  The Rule "is designed to encourage courts to apprise themselves of the 'practical considerations' of each individual case in light of the policies underlying the [R]ule." *Id.*

**Stump's Motion to Dismiss**

The Magistrate Judge ordered Robert S. Stump joined as a "necessary" party pursuant to a telephonic case management conference.  Under old Rule 19, the court had to make a determination as to whether an absent party was "necessary" or "indispensable" when faced with a motion to join the absent party or on its own initiative. Under the amended rule, the former "necessary" party is now referred to as "desirable" while the "indispensable" party is still couched in the same terms, though in only a conclusory sense. *See* Adv. Comm. Notes, Subdivision (b).  Nevertheless, the analysis is largely unchanged and to be judged by the standards set forth above.

After a careful consideration of the facts surrounding the joinder of Robert S. Stump, the court concludes that his presence in this litigation is certainly not "indispensable" under Rule 19(b) and is not even likely "desirable" under Rule 19(a).  His presence is simply not required for a full adjudication of the rights and obligations between Huntington Bank and Entecap.  Thus, faced with Stump's motion to dismiss,

the court finds that dismissal without prejudice of Stump is the proper course.

## Huntington Bank's Motion for Summary Judgment

Huntington Bank seeks summary judgment asking the court to declare which of two statutes should be followed in order for Huntington Bank to execute on Stump's stock in Entecap.  One statute, Mississippi Code Annotated § 13-3-129, requires that a sheriff present an issued "Writ of Execution" to a corporation and make demand for a statement of the debtor's interest in the corporation, and provides that a levy is effective once that demand is made.  Then, under Mississippi Code Annotated §13-3-129, the Sheriff is entitled to sell Stump's shares in Entecap in full or partial satisfaction of the Judgment, without the need for the physical share certificate to be seized and in hand at the sale.

The other applicable statute, Mississippi Code Annotated § 75-8-112, modeled after Section 8-112 of the Uniform Commercial Code (the "UCC"), requires that where stocks are certificated, the actual certificates must be seized to effect a valid levy. Huntington Bank has been unable to actually seize Stump's Entecap stock because, according to Stump the certificates have allegedly been lost, and Entecap asserts that it does not know the whereabouts of the certificates.   Accordingly, Huntington Bank seeks a determination of which statute, Miss. Code Ann. § 13-3-129 or Miss. Code Ann. § 75-8-112, is applicable to this action.  And, if Miss. Code Ann. § 75-8-112 is applicable to this action, Huntington Bank seeks an Order compelling Entecap to reissue Stump's stock certificates for delivery to the Forrest County Sheriff and an Order authorizing the Sheriff to execute on those stock certificates.  Regardless of which statute the court

11

deems applicable, Huntington Bank requests that the court declare that Huntington Bank

may credit bid in all or part of the amount of its Judgment at the execution sale of

Stump's stock, and then direct the Sheriff to execute upon and sell Stump's shares in

Entecap, with the credit bid of Huntington Bank or the cash proceeds from another

higher bidder to be applied toward satisfaction of Huntington Bank's Judgment against

Stump.

Mississippi's stock levy statute, entitled "Levy on corporate stock," states, in

pertinent part:

> In case of the levy of an execution or attachment on the stock, shares, or interest
> of the defendant in any corporation or joint stock company, the officer shall go to
> the office or principal place of business of the corporation or company, and there
> declare that he attaches or levies upon the stock, shares, or interest of the
> defendant therein at the suit of the plaintiff. The offcer shall demand of any
> officer, agent, or clerk of such corporation or company there present, and who is
> not the defendant, a statement in writing, under oath, of the amount of the
> defendant's stock, the number of his shares, or extent of his interest in such
> corporation or company, and shall leave with the officer, agent, or clerk, a copy of
> the writ. ... The stock, shares, and interest of the defendant in the corporation or
> company, including all dividends that may accrue after such levy, shall be bound
> by the lien of the execution or attachment. The corporation or company shall,
> within a reasonable time, not longer than ten days after the levy, deliver to the
> officer a statement in writing, under oath, of the particulars demanded by the
> officer, and of the value of the defendant's stock, shares, or interest .... The
> failure ofthe corporation or company to make such statement shall not affect the
> right of the officer to sell the stock, shares, or interest of the defendant.

Miss. Code Ann. § 13-3-129.

Huntington Bank has enrolled its Judgment against Stump in Forrest County,

Mississippi, and, in accordance with Miss. Code Ann. § 13-3-129, Huntington Bank has

caused certain Writs of Execution to be issued by the Circuit Clerk of Forrest County

instructing the Sheriff of Forrest County to execute upon Stump's shares and interests in

Entecap.  The Sheriff levied upon those shares and interests pursuant to the various

Writs of Execution. Subsequently, in compliance with Miss. Code Ann. § 13-3-129,

Entecap served Statement of Interest Forms in response to the Writs of Execution

indicating that Stump owns 33% of the shares of stock in Entecap, or 1000 shares.

Section 8-112 of the Uniform Commercial Code (the "UCC"), as adopted by Miss.

Code Ann. § 75-8-112, entitled "Creditor's legal process" states, in pertinent part:

> (a) The interest of a debtor in a certifcated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy, except as otherwise provided in subsection (d). However, a certificated security for which the certificate has been surrendered to the issuer may be reached by a creditor by legal process upon the issuer.

. . .

> (d) The interest of a debtor in a certificated security for which the certificate is in the possession of a secured party, or in an uncertificated security registered in the name of a secured party, or a security entitlement maintained in the name of a secured party, may be reached by a creditor by legal process upon the secured party.

> (e) A creditor whose debtor is the owner of a certificated security, uncertificated security, or security entitlement is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security, uncertificated security, or security entitlement or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process.

Miss. Code Ann. § 75-8-112 (emphasis added).

According to the language of Miss. Code Ann. § 75-8-112, Huntington Bank

asserts that it would appear that it is required to physically seize Stump's Entecap stock

certificates to effect a valid levy.  However, despite all its efforts, Huntington Bank has

been unable to locate said certificates, if they exist.  For, as discussed above, Stump

has testified under oath that the stock certificates have been lost, and Entecap has

stated in Answers to Garnishment that it does not know the whereabouts of the

certificates.  Huntington Bank argues that notwithstanding the language of Miss. Code
Ann. § 75-8-112, the physical seizure requirement may be moot if the certificates have in
fact been lost or destroyed, and the court agrees.  In the Official Comment to the 1977
revisions to the Uniform Commercial Code, which required actual seizure of the
certificates under Creditor's Rights Section 8-317, it was noted that the chief justification
for the seizure rule was the protection of purchasers from the debtor:

> The rule is entirely appropriate when the security is within the debtor's
> control.  When the debtor does not have such control, the rule has no function.
> The present statute recognizes a single exception to the rule where the security
> has been surrendered to the issuer.

This comment and a logical reading of the section supports the position that
seizure should not be required for Stump's shares in Entecap, and that the levy made
pursuant to Miss. Code Ann. § 13-3-129 is perfected as made and the court so finds

IT IS THEREFORE ORDERED AND ADJUDGED that Stump's Motion to Dismiss
**[#21]** is granted and he is dismissed from this action without prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that Huntington Bank's Motion for
Summary Judgment **[#18]** is Granted and the court hereby finds and declares that Miss.
Code Ann. §13-3-29 applies to the execution and levy by Huntington Bank on Stump's
shares and interest in Entecap and that the levy so made has been perfected.

IT IS FURTHER ORDERED AND ADJUDGED that the Sheriff of Forrest County,
Mississippi is directed to execute upon and sell Stump's shares in Entecap and that
Huntington Bank may credit bid in all or part of its Judgment at the execution sale of
Stump's stock, and that the credit bid of Huntington or the cash proceeds from another
higher bidder are to be applied toward satisfaction of all or a portion of Huntington

14

Bank's Judgment against Stump.

IT IS FURTHER ORDERED AND ADJUDGED that all pending matters in this case having been resolved, this action is dismissed in its entirety and any other pending motions are dismissed as moot.

A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 6th day of December, 2006.

s/Keith Starrett
UNITED STATES DISTRICT JUDGE

15